**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 16-CV-01257-RM-MJW

TERRIE SUTTON, as Assignee of LEROY GRIGSBY,

    Plaintiff,

v.

LOYA INSURANCE COMPANY,

    Defendant.

---

**ORDER**

---

Before the Court is Defendant Loya Insurance Company's ("Defendant" or "Loya") "Motion for Summary Judgment and Memorandum of Law in Support" (the "Motion"). (ECF No. 24.) Plaintiff Terrie Sutton ("Plaintiff") filed her "Response to Defendant Loya Insurance Company's Motion for Summary Judgment and Memorandum of Law in Support" ("Response") (ECF No. 27), to which Defendant filed its "Reply in Support of Motion for Summary Judgment and Memorandum of Law in Support." (ECF No. 29.) The Motion is now ripe for decision. The Court has carefully considered the parties' briefs, related exhibits, the entire case file, and the applicable case law. For the following reasons, the Court GRANTS the Motion. (ECF No. 24.)

**I. STATEMENT OF MATERIALS FACTS**

The facts as recited below are based on adequate citations to the record, the contents of which would be admissible, or to uncontested averments in the parties' pleadings or to facts marked as undisputed pursuant to the parties' Statements of Undisputed Material Facts

("SUMF", ECF No. 30.)  Where facts are in dispute, such disputes are noted herein.  The Court recites the facts in the light most favorable to Plaintiff, the non-moving party.

Defendant is an insurance company engaged in the business of insurance within Colorado.  (SUMF ¶ 1.)  In November 2013, Plaintiff was injured in an automobile collision in which she was rear-ended by an automobile operated by Mr. Leroy Grigsby.  (SUMF ¶ 2.)  At the time of the accident, Mr. Grigsby was insured under Defendant's Colorado Personal Auto Policy No. 67552436169, which had liability limits of $25,000 per person and $50,000 per accident.  (ECF No. 25-1 at 6, SUMF ¶¶ 3, 4.)  Following the accident, Plaintiff demanded payment from Defendant for certain medical expenses resulting from the accident, and the parties communicated through a series of exchanges as described below.

Following the accident, Plaintiff, through her attorneys, sent a letter dated July 28, 2014, to Defendant itemizing Plaintiff's medical expenses and stating, in part:

> It is our understanding that you have liability limits of $25,000.00.  We hereby demand that you tender limits by August 29, 2014.  If policy limits are not received by that date, we will no longer accept your limits and pursue your insured for the full value of [Plaintiff's] claim.

(ECF No. 28-1, *see* SUMF ¶ 5.)  In response, by letter dated August 11, 2014, Defendant's claims division sent a letter to Plaintiff's attorney extending an offer of $25,000 as a full and final settlement of Plaintiff's bodily injury claim.  (ECF No. 28-2, SUMF ¶ 6.)  In relevant part the letter stated, "we hereby extend an offer of $25,000.00 as full and final settlement for your Bodily Injury claim[,]" with a follow up number Plaintiff could call to "conclude this matter in a most timely fashion."  (ECF No. 28-2.)

On October 14, 2014, Defendant sent another letter to Plaintiff's attorney that "reflects our agreement and confirms full and final settlement of all claims and causes of action against [Mr. Grigsby] . . ."  (ECF No. 28-3, SUMF ¶ 7.)  In relevant part, the October 14, 2014 letter

2

stated:

>[Claim Number and Corresponding Policy Information]
>
>Dear [Plaintiff's Attorney],
>       This letter reflects our agreement and confirms full and final settlement of all claims and causes of action against [Mr. Grigsby . . .].  In exchange for your client's release of any and all liability regarding claims your client has or may have against [Mr. Grigsby] as result of the loss referenced above Fred Loya Insurance Agency, Inc. agrees to pay **TWENTY-FIVE THOUSAND [ ] Dollars ($25000.00) to TERRIE SUTTON on behalf of [Mr. Grigsby].  As part of this settlement, your client and firm are responsible for any and all liens, known or unknown.  Liens, if any, must first be satisfied out of the settlement proceeds.  Court costs, if any, are to be paid by the party incurring those costs.
>
>       Please sign where indicated below to acknowledge your client's acceptance of the settlement described above . . .  Upon my receipt of the signed agreement, I will request the settlement check be issued.
>
>Sincerely,
>ALBERT LOPEZ
>LOYA INSURANCE COMPANY
>
>AGREED & ACCEPTED
>
>_____
>Attorney for Claimant
>
>_____
>Printed Name & Date
>
>_____
>Tax ID Number

(*See* ECF No. 28-3.)  Also on October 14, 2014, Defendant faxed Plaintiff's counsel a Release of All Claims to be executed by Plaintiff.  (ECF No. 28-5.)

On October 18, 2014, Plaintiff's attorney, Ms. Patricia Meester, executed Defendant's October 14, 2014 letter in the signature block provided.  (ECF No. 28-4.)  Ms. Meester signed and printed her name, dated the letter 10/18/14, and entered her Tax ID Number.  (ECF No. 28-4, SUMF ¶ 8.)  To the right of the signature block, Ms. Meester made the following handwritten notation: "*The check will be payable only to Terrie Sutton and Franklin D. Azar & Associates."

(ECF No. 28-4, SUMF ¶ 9.)  Defendant received the fax of the executed letter on or about October 21, 2014, however, did not immediately issue payment.  (Plaintiff's Additional Facts, SUMF ¶ P-8, ECF No. 28-5 at 1–2.)

On December 11, 2014, Plaintiff's attorneys sent a letter to Defendant demanding it issue the settlement checks.  The letter stated, "We have been waiting for months for the settlement checks for policy limits.  As you know, our agreement to accept the policy limits was contingent on the limits being tendered months ago."  (ECF No. 28-7.)  The letter went on to direct Defendant to issue settlement checks:  "1 payable to Platte Valley Hospital in the amount of $2,383.00 and the other payable to Ms. Sutton and our firm in the amount of $22,617.00" to be received by Plaintiff's attorney's office by the following day, December 12, 2014.  (ECF No. 28-7, SUMF ¶ 10.)  The letter stated, in the event the checks were not received by December 12, 2014, Plaintiff would proceed with filing a lawsuit to pursue the full value of her claim against Mr. Grigsby.  (ECF No. 28-7.)  Defendant received the December 11, 2014 letter by fax on December 11, 2014 at 10:47 a.m.  (SUMF ¶ P-16.)

On December 12, 2014, Defendant printed the two checks as requested by Plaintiff, and on December 14, 2014 mailed the checks to Plaintiff's attorney, which, was after Plaintiff's imposed deadline.  (SUMF ¶¶ 11, 12, P-17.)  Importantly, Plaintiff's attorneys received the checks, collectively in the full amount of the $25,000 Policy Limits, but did not cash them.  (SUMF ¶ 13.)  Plaintiff never executed the Release of all Claims, and it was not returned to Defendant.  (SUMF ¶ P-9.)

As promised, on December 19, 2014, Plaintiff filed a lawsuit against Mr. Grigsby in Colorado state court, Case No. 2014-CV-032325 (the "Underlying Lawsuit").  (SUMF ¶ 14.)  Mr. Grigsby failed to appear or otherwise defend himself in the Underlying Lawsuit, and on May

4

19, 2015, Plaintiff moved for default judgment against Mr. Grigsby, which the court entered on January 5, 2016, in an amount in excess of $680,000. (SUMF ¶¶ 15, 16, 17.) Defendant did not answer on behalf of, or defend Mr. Grigsby in the Underlying Lawsuit. (SUMF ¶ P-19.)

Plaintiff and Mr. Grigsby then entered into an agreement under which Plaintiff agreed not to execute on her state-court $680,000-plus judgment in exchange for Mr. Grigsby assigning to Plaintiff any claims he may have had against Defendant. Plaintiff then sued Defendant in this matter, which Defendant removed to this Court, asserting Mr. Grigsby's assigned claims and seeking damages based on the $680,000-plus default judgment entered against Mr. Grigsby. In addition to filing an answer, Defendant filed a counterclaim for declaratory judgment with respect to the settlement agreement and its impact on the Underlying Lawsuit. (ECF No. 10.)

Plaintiff asserts three claims against Defendant—breach of contract, bad faith breach of insurance contract, and a statutory claim under C.R.S. § 10-3-1116—each on the basis of Grigsby's alleged injury resulting from Defendant's failure to defend and provide liability coverage to Grigsby in the Underlying Lawsuit. (ECF No. 1-1 at 3–5.) Defendant now seeks summary judgment declaring the October 18, 2014 executed letter constitutes a valid settlement agreement through which Plaintiff released all claims against Mr. Grigsby. If the contract is valid, she released any claims against Mr. Grigsby. Accordingly, no judgment damages could be assigned, and Plaintiff would be barred from using the $680,000-plus default judgment entered against Mr. Grigsby in any way in this bad faith case. Alternatively, Defendant seeks summary judgment on Plaintiff's claims to the extent they are based on Defendant's conduct after August 11, 2014, the date it first offered to pay full Policy limits. Defendant further seeks a judgment on its counterclaim declaring that it cannot be held liable for failing to defend Mr. Grigsby in the Underlying Lawsuit.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c)(2). To meet the burden of persuasion required to support summary judgment, the movant must "point to those portions of the record that demonstrate an absence of a genuine issue of material fact, given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A fact is "'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Equal Emp't Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

While the moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact, the movant need not negate the non-movant's claim. *See Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991); *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994). Once the moving party points to an absence of evidence to support the non-moving party's claim, the non-moving party may not rest upon his or her pleadings, but must present specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *See* Fed. R. Civ. P. 56(e); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the non-moving party will bear the burden of proof at trial, it must come "forward with sufficient competent evidence to establish a prima facie claim." *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 825 (D. Colo. 2016).

The court must construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Conclusory allegations will not create a genuine issue of material fact necessitating trial. *Dobson v. City & Cty. of Denver*, 81 F. Supp. 2d 1080, 1083 (D. Colo. 1999); *cf. Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (acknowledging "conclusory allegations without specific supporting facts have no probative value"). Evidence that is not significantly probative and immaterial factual disputes will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp. 2d 1246, 1252 (D. Colo. 1998). The demonstration of "some metaphysical doubt as to the material facts" is not sufficient to establish a genuine issue of material fact. *Foreman v. Richmond Police Dep't*, 104 F.3d 950, 957 (7th Cir. 1997). "The very purpose of a summary judgment action is to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). In short, this Court must determine whether Plaintiff has come forward with specific facts to overcome Defendant's Motion in whole or in part.

### III.  ANALYSIS

Defendant seeks summary judgment on three bases: first, that the October 18, 2014 letter constitutes a valid and enforceable contract through which Plaintiff released her claims against Mr. Grigsby; second, that Plaintiff's claims fail as a matter of law to the extent they rely on Defendant's conduct after its August 11, 2014 tender of policy limits; and third, that Defendant cannot be held liable for failing to provide Mr. Grigsby a defense in the Underlying Lawsuit. The Court addresses each argument below.

### A. The October 18, 2014 Letter is an Enforceable Contract

First, Defendants seek a declaratory judgment that Plaintiff released her claims against Mr. Grigsby pursuant to the terms of an unambiguous settlement agreement the parties entered into, which in turn bars any judgment damages which Mr. Grigsby could assign to Plaintiff, and that Plaintiff is therefore barred from using the $680,000-plus default judgment entered against Grigsby in any way in this bad faith case. (ECF No. 24 at 5–6.) For the reasons that follow, the Court agrees.

*a. Existence of a Contract—Mutual Assent*

Defendant argues the October 18, 2014 letter, signed by Plaintiff's attorney is a valid and enforceable settlement agreement through which Plaintiff released her claims against Mr. Grigsby in exchange for Defendant's agreement to pay the $25,000 Policy limits. (ECF No. 24 at 5–9.) Defendant argues its October 14, 2014 letter was an unambiguous offer to pay the $25,000 Policy limits, which Plaintiff agreed to and accepted in writing through her attorney on October 18, 2014. (ECF No. 24 at 7.) Plaintiff's release of her claims and Defendant's agreement to pay were the consideration supporting the contractual agreement, according to Defendant. (ECF No. 24 at 7.)

Plaintiff responds there is no enforceable contract because Plaintiff never accepted Defendant's offer. (ECF No. 27 at 3–7.) Rather, Plaintiff argues her counsel's notation on the October 18, 2014 letter, which indicated the check should be payable "only to Terri Sutton and Franklin D. Azar & Associates[,]" was a modification to the agreement, not a mirror-image acceptance of Defendant's offer. (ECF No. 27 at 4.) According to Plaintiff, this modification constitutes a counter-offer, and thus, she never accepted the terms of the agreement, and no contract exists.

"A court may only enforce a settlement agreement if it constitutes an enforceable

contract." *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009) (*citing Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo.2008)). "A contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration. *Id. (citing Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo.App.2008)). "It is well settled that a proposal to accept, an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested." *Goodwin v. Eller*, 127 Colo. 529, 537 (1953).

In the instant case, Plaintiff's counsel's notation does not constitute a modification of Defendant's offer to bar contract formation. Defendant's settlement offer laid out the terms of the agreement and then directed Plaintiff's attorney to "Please sign where indicated below to acknowledge your client's acceptance of the settlement described above." (ECF No. 28-3.) Plaintiff's attorney then executed the signature block under the notation, "AGREED & ACCEPTED[.]" (ECF No. 28-4.) Ms. Meester's check payable notation directing payment to be issued only to Plaintiff and her attorneys does not alter her unequivocal and absolute acceptance of the terms offered, consistent with contract formation under Colorado law.

The main case to which Plaintiff directs the Court for the proposition an acceptance must be identical to the terms of the initial offer is distinguishable from the alleged modification at issue here. In *Nucla Sanitation Dist. v. Rippy*, 344 P.2d 976, 977–79 (Colo. 1959), the offeree signed and returned the executed contract and included with it a letter that added the condition that the completion date of a construction contract be extended. The Supreme Court of Colorado found this modified the initial proposition of the contract, such that there was no meeting of the minds. *Id.* at 979. In so doing, the court rejected the notion that modifications need be substantial and material to constitute a counteroffer, and rather, stated, "[u]nless the proposition

9

made by one is accepted by the other, *without any modification whatever*, no contract arises. In such case there is no concurrence of parties." *Id.* at 979.

The notation indicating to make the check payable "only to Terri Sutton and Franklin D. Azar & Associates[,]" in no way altered the basis of the transaction, for example extending the time for contract completion, like that contemplated in *Nucla*, or to the other cases Plaintiff cites. *See Arenberg v. Cent. United Life Ins. Co.*, 18 F. Supp. 2d 1167, 1174 (D. Colo. 1998) (*citing Nucla* and stating, "If the acceptance modifies the proposition in any particular, it amounts to nothing more than a counter-proposal and is not an acceptance which will complete the contract."); *Hall v. Gehrke*, 117 Colo. 223, 227 (1947) (no acceptance when the offeree shifted position from that of agent to vendee under a purchase and sale agreement and thereby "altered the basis of the transaction"); *Salomon v. Webster*, 4 Colo. 353, 361 (1878) (no acceptance when offeree modified and resubmitted offer with an altered payment amount due under the contract). Indeed, Ms. Meester's notation does not alter any term included in those offered in the letter, or any proposition included in the offer. It is a mere payment direction, no different from sending direct deposit instructions, an address for physical delivery, or other like instruction. What it is not, is a counter-offer. The fact that Plaintiff later changed her mind about the settlement or became dissatisfied with the timeliness in which Defendant issued payment in accordance therewith does not constitute grounds to now find a flaw in contract formation. The parties' October 18, 2014 letter[1] was an unambiguous agreement to pay the $25,000 Policy limit, for which Plaintiff gave her unqualified acceptance in exchange for a release of claims. Accordingly, Plaintiff's alleged modification does not bar formation of a contract.

### b. *Existence of a Contract—The Parties' Contemporaneous Conduct*

Alternatively, Plaintiff argues even if the Court finds that Plaintiff accepted the offer, the

---

[1] Defendant's October 14, 2014 offer letter as signed and return by Plaintiff.

10

contemporaneous conduct of the parties demonstrates the October 18, 2014 letter was not intended to be a final agreement.  (ECF No. 27 at 5–7.)  Specifically, Plaintiff points to the separate Release of All Claims that Defendant faxed the same day, which according to Plaintiff, shows any agreement was conditioned on Plaintiff's execution of the Release, which to date, she has not executed.  (ECF No. 27 at 5–6.)  Plaintiff also argues neither party performed the agreement (even after her attorney executed the October 18, 2014 letter), indicating that there was no agreement between the parties.  (ECF No. 27 at 6.)

The Court declines to find the same, and the case to which Plaintiff directs the Court is again distinguishable.  In *H. W. Houston Const. Co. v. Dist. Court of Tenth Judicial Dist.*, 632 P.2d 563, 565 (Colo. 1981), there was never an understanding which could be basis of settlement between parties where defendants' attorneys indicated that they believed a $2,500 payment covered settlement of all claims arising from an accident with plaintiff's cement truck, and accordingly, submitted general release forms to plaintiff.  However, plaintiff's attorney indicated that he understood settlement was limited only to the claim for property damages and not all claims arising out of incident; and expressly counseled his client not to execute the general release.  *Id.* at 565–66.  Since there was no meeting of the minds with regard to the scope of proposed settlement, it was not enforceable.  *Id.*

Here, there is no evidence of a failed meeting of the minds.  Even if the Court looks outside the four corners of the October 18, 2014 agreement, which by its terms stated it was a "full and final settlement of all claims and causes of action," and did not suggest it was contingent upon execution of the separate Release of all claims; the conduct of the parties shows they intended to enter into the agreement on October 18, 2104.  First, the agreement itself gave Plaintiff's attorney authority to "acknowledge her client's acceptance of the settlement [,]" and

upon signing the letter on Plaintiff's behalf, her attorney indicated the check should be payable only to Plaintiff or her attorney, nowhere did she suggest any outstanding contingencies needed to be arranged.  Moreover, Plaintiff's attorney went on to demand payment consistent with the settlement's terms months after signing the initial agreement.  The December 11, 2014, demand letter indicated Plaintiff had "waited months for the settlement checks," pursuant to "our agreement" and "demanded that the settlement checks . . . be received by Plaintiff's attorneys [the next day]."  (SUMF ¶¶ 10, 14.)  To date, Plaintiff has still not signed any Release, and even if Defendant was awaiting the Release before issuing of payment, the formality of the Release of all Claims does not invalidate the parties' original agreement when the parties assented to all essential terms.  *See Coulter v. Anderson*, 144 Colo. 402, 409-10 (Colo. 960).  Similarly, Plaintiff's argument Defendant's claims file indicated Defendant was awaiting lien information does not bar any agreement, as the formality of liens were expressly contemplated in the agreement itself,  ("As part of this settlement, your client and firm are responsible for any and all liens, known or unknown. Liens, if any, must first be satisfied out of the settlement proceeds.").

The important thing with respect to the Release, moreover, is that there appears to be no evidence the items it included varied any terms of the parties' initial agreement as stated in the October 18, 2014 letter.  The fact of the matter remains that even if Defendant was awaiting the formality of the executed Release, upon Plaintiff's threat of litigation in the December 11, 2014 demand letter, Defendant paid Plaintiff $25,000, consistent with their agreement.  Plaintiff's attorney received the checks but did not cash them (presumably because they were past her self-imposed deadline) and went on to file the Underlying Suit.  However, nowhere in the agreement did it say that checks needed to issue on any certain day.

The entirety of Plaintiff's conduct following the consummation of the agreement, and for

months afterward, indicates her acceptance of, and intent to enter into, a settlement release through the October 18, 2014 letter.  Indeed, albeit delayed perhaps by Plaintiff's own failure to return a separate, executed Release, Defendant performed its obligations.  Plaintiff cannot now attempt to repudiate the existence of an agreement based on Defendant's failure to issue payment within a time frame she imposed.  The October 18, 2014 letter constitutes an enforceable contract, and no reasonable jury could find otherwise.

     *c. Effect of Existence of a Valid Settlement Agreement*

As a consequence of the Court finding a valid settlement agreement exists, Defendant asks the Court to enforce that agreement, declaring Plaintiff released her claims against Mr. Grigsby.  As a result of the release, it follows Plaintiff had no claims to assert against Mr. Grigbsy in the Underlying Lawsuit; Mr. Grigsby had no judgment damages to assign to Plaintiff; and Plaintiff is barred from using the $680,000-plus default judgment against Defendant in any way in this bad faith case.  The Court finds such a declaration is appropriate.

Here, the parties had a valid settlement in which Plaintiff would release all claims against Mr. Grigsby in exchange for $25,000.  Defendant paid Plaintiff $25,000; Plaintiff's attorney received the checks; however, did not cash them, and instead filed suit.  It appears Plaintiff, dissatisfied with Defendant's timing of payment (made approximately two months after her attorney signed the October 18, 2014 letter entering into the settlement agreement), although check in hand, still sought more.

Had Plaintiff been dissatisfied with Defendant's delay she could have, for example, moved to enforce their settlement agreement, or brought a claim for breach of that agreement, rather, she seeks to enforce Mr. Grigsby's claims for Defendant's alleged failure to timely pay, claims she released months prior.  "[L]ater dissatisfaction with the terms of a stipulated compromise

13

agreement is not sufficient grounds to set it aside." *Humphreys v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-00331-WYD-KMT, 2009 WL 1292617, at *6 (D. Colo. May 8, 2009), *amended,* No. Civ. 08-CV-00331-WYD-KMT, 2009 WL 1537869 (D. Colo. June 1, 2009) (*quoting Royal v. Colorado State Personnel Board,* 690 P.2d 253, 255 (Colo. App. 1984); *Recreational Development Co. of America v. American Const. Co.,* 749 P.2d 1002, 1005 (Colo. App. 1987)). "Changing one's mind about a contract is not grounds to avoid the ramifications of an enforceable contract. As stated in *Woods v. Denver Dep't. of Revenue, Treasury Div.,* 45 F.3d 377, 378 (10th Cir.1995), 'a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind.'" *Id.* at 6.

Because Plaintiff released her claims against Mr. Grigsby, Plaintiff has no valid claims as assigned from Mr. Grigsby. Summary judgment is granted in Defendant's favor on this basis and the Court need not address Defendant's alternative argument.

**B. Defendant is Not Liable for Failing to Defend Mr. Grigsby in the Underlying Lawsuit**

The parties agree, upon issuance of the automobile insurance policy to Mr. Grigsby, Defendant undertook a duty to defend Mr. Grigsby as to claims that fell within the coverage of that policy. However, based on the settlement agreement and release of all claims against Mr. Grigsby, Defendant now seeks a declaration it cannot be held liable for failing to provide a defense to Mr. Grigsby in the Underlying Lawsuit. (ECF No. 24 at 10.)

The parties agree this issue rises and falls with the Court's determination if the October 18, 2014 letter constitutes a valid contract by which Plaintiff released all claims against Mr. Grigsby. Again, the fact of the matter is that the parties entered into an agreement where, "[i]n exchange for [Plaintiff's] release of any and all liability regarding claims your client has or may

14

have against [Mr. Grigsby . . .], [Defendant] agrees to pay [] $25,000.00 to Terrie Sutton on behalf of [Mr. Grigsby]." (ECF No. 28-3.) Defendant paid Plaintiff. Because the Court concludes, for the reasons set forth above, that the parties entered into an enforceable settlement agreement, and the parties do not dispute the extent and nature of the settlement, Defendant had no duty to defend Mr. Grigsby as a matter of law.

## IV. CONCLUSION

In accordance with the foregoing, it is ORDERED:

(1) Defendant Loya Insurance Company's Motion for Summary Judgment (ECF No. 24) is GRANTED as to each of Plaintiff's claims for relief;

(2) Defendant Loya Insurance Company's Motion for Summary Judgment (ECF No. 24) is GRANTED to the extent it seeks a declaration that Defendant is not liable for its refusal to provide a defense to Mr. Grigsby in the Underlying Lawsuit.

(3) The Clerk of the Court is directed to enter final judgment in favor of Defendant and CLOSE this case.

DATED this 25th day of September, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge